## Case No. 5,745.

### Ex parte GREELEY.

[6 Fish. Pat. Cas. 575; Holmes, 284; 4 O. G. 612; Merw. Pat. Inv. 220.] [1]

Circuit Court, D. Massachusetts. Nov. 14, 1873.

PATENTS—NOVELTY OF DEVICE—METALLIC BUTTON-HOLES.

1. The device for which a patent is sought by complainant is not novel. It possesses the same elements. operating in the same way, to produce the same result as the device shown in the English patent, granted R. A. Brooman, in 1861, which is cited as a reference in the record of the case, in the patent office.

2. Form of bill and proceedings in a suit in equity for the grant of a patent under section 52 of the act of July 8, 1870 [16 Stat. 198].

[Cited in Re Squire, Case No. 13,269.]

Final hearing on pleadings and proofs.

Suit brought under section 52 of the act of July 8, 1870, for the grant of a patent, the same having been refused by the commissioner of patents. Greeley filed his application for a patent September 13, 1869, for "an improvement in metallic button-holes and links." His application was finally rejected by the examiner, February 28, 1870. He then appealed to the board of examiners-in-chief, and was rejected April 27, 1870. He thereupon appealed to the commissioner, and was rejected, September 17, 1871. He then appealed to the supreme court of the District of Columbia, and was there rejected, May 3, 1871. In August, 1873, he filed in the circuit court of the United States, for the district of Massachusetts, the following bill in equity:

"Bill of Complaint. To the Honorable the Justices of the Circuit Court of the United States for the First Circuit, within and for the District of Massachusetts, Sitting in Equity: Benjamin J. Greely, of Boston, in said district, and a citizen of the United States, complains and says: That he is the original and first inventor of a certain new and useful metallic button-hole and link combined. and of a certain new and useful combination of this combined button-hole and link, with a piece of webbing having a button-hole in or attached to its free end, and a slide, all as fully set forth and described in the application for letters patent. both presently referred to, a certified copy of which is now in court, produced and shown to your honors. That, being such inventor, he duly made application to the government of the United States for letters patent therefor; that his said application was duly filed in the patent office of the United States, September 13, 1869; that his said application was rejected finally by the examiner in charge, February 28, 1870; whereupon your orator duly appealed to the board of examiners-in-chief; but his said application was rejected by the said board of examiners-in-chief, April 27, 1870; whereupon your orator duly brought his application before the commissioner of patents in person, but it was rejected by the commissioner of patents in person, September 17, 1871; whereupon your orator took an appeal to the supreme court of the District of Columbia sitting in banc; and that your orator was refused a patent on his said application by the supreme court of the District of Columbia, upon appeal from the commissioner, on May 3, 1871; all which, by a certified copy of the file-wrapper and contents, and drawing in the matter of the said application, now in court produced and shown to your honors, will more fully appear. And your orator further shows unto your honors that he is entitled to a remedy by a bill in equity brought before this honorable court, by force of the statute in such case made and provided. Wherefore he brings this his bill in equity, and humbly prays your honors to adjudge that he is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for such part thereof as upon consideration may be found patentable. and for such other and further relief in the premises as the nature of the case may require, and to your honors may seem meet. And your orator will ever pray. (Signed) Benjamin J. Greely."

A copy of the bill was served on the commissioner of patents by mail, who accepted service of the same, as follows:

"To the Honorable the Justices of the United States Circuit Court for the District of Massachusetts, Sitting in Equity: I hereby acknowledge due service upon me of a copy of the bill in equity of Benjamin J. Greely, of Boston, in the district of Massachusetts, filed in the circuit court of the United States for said district, August 27, 1873; said copy being duly certified by Edwin T. Nash, deputy clerk of the said court, under the seal of the said court. In testimony whereof, I have hereunto set my hand and caused the seal of the patent office to be hereunto affixed, this 2d day of September, in the year of our Lord 1873, and the independence of the United States the ninety-eighth. (Seal.) M. D. Leggett, Commissioner of Patents."

The following letter was at the same time sent to the court by order of the commissioner:

"U. S. Patent Office, Washington, D. C., September 30, 1873. Dear Sir: I am an officer of this bureau; deputed by the commissioner of patents to attend to cases appealed from the patent office, and have received a copy of a bill of complaint filed in the clerk's office of the circuit court of the United States for the First circuit and district of Massachusetts, under section 52 of the patent act, by J. E. Maynadier, attorney for Benjamin J. Greely, in the matter of his application for patent for improved button-

---

[1] [Reported by Samuel S. Fisher, Esq., and by Jabez S. Holmes. Esq.. and here compiled and reprinted by permission. Merw. Pat. Inv. 220, contains only a partial report.]

hole and link. Patent cases appealed from the office, being sui generis and ex parte, the United States court in this city has provided by rule that the commissioner may appear by attorney, in order to aid the court in obtaining a full, clear, and correct knowledge of the matters before it for adjudication. The commissioner has also been represented in other United States courts for the same purpose. It may be desirable, with the permission of the court, that I should file a brief or appear in person in the above-named case. Will you be so good as to inform me, if you can, of the time of hearing? Address the commissioner. Very respectfully, yours, Marcus S. Hopkins, Examiner.

"Clerk United States Circuit Court, District of Massachusetts."

By direction of the circuit court, the clerk wrote to the commissioner, under date of October 20, 1873, acknowledging the receipt of the foregoing letter, and stating that the court would be pleased to receive whatever aid the commissioner was able to give in the determination of the cause under consideration, either by oral argument from the commissioner in person, or such a representative as he might designate for that purpose, or the court would receive a brief. This course of proceeding applied also to any future applications of like nature which might be made to the circuit court of this district. This letter to the commissioner was replied to as follows:

"U. S. Patent Office, Washington, D. C., October 22, 1873. Sir: I am directed by the commissioner of patents to acknowledge the receipt of yours of the 20th inst., referring to the case of Benjamin J. Greely, set for hearing November 3d. I shall endeavor to prepare and file a brief before that time, should other engagements permit. In case I should not, however, the commissioner does not desire that the case should be delayed on that account. Very respectfully, Marcus S. Hopkins, Examiner.

"Clerk United States Circuit Court, Boston, Mass."

To support his bill, complainant filed, about October 10th, the following affidavit:

"Benjamin J. Greely, being duly sworn, doth depose and say: I am the complainant above named. I have been engaged in the manufacture of suspenders since 1858, and, during fully one-half of that time, that has been my sole business. I have obtained, I believe, ten patents during that time, of which five at least were for suspenders. In my opinion, I never invented anything for which I was more clearly entitled to a patent than the metallic button-hole and link mentioned in my bill of complaint, samples of which are hereto annexed, marked 'Exhibit A.' The only references given by the patent office as anticipating my invention were the patents to L. A. Kettle, dated August 24, 1869, and to J. R. Little, dated September 21, 1869; and third, the English patent to Brooman, No.

1,824, for 1860. The first two references are wholly different from my device, so much so that they were abandoned by the patent office; and my case was finally rejected on reference to the English patent alone. But I file herewith certified copies of all the references. It will be seen that the Brooman device is a metallic link and button-hole combined, as decided by the commissioner. See Decisions of Commissioner of Patents for 1870, page 106. I would here remark that the commissioner inadvertently quoted my claim as at first made, and made no mention of the narrower claim made by the amendment of February 17, 1870, filed in the office February 23, 1870. Had he not overlooked this amended claim, which was the claim he rejected, I believe that his decision must have been different. The Brooman device may be regarded, for the sake of analysis, as composed of the four pieces a, b, c, d, in the diagram No. 1. But, on applying the same analysis to my device, it will be found that the only thing it has in common with Brooman's are the pieces b and d. The piece a in my device, diagram No. 2, which shows my device, as well as Brooman's, differs wholly from the piece a in Brooman's device, for in the latter that piece a corresponds in function to the piece g in my device; that is to say, the web lies around the piece a in Brooman's device, and around the piece g in my device. The pieces b and d are the same in form in my device as in Brooman's, but wholly different in function. Brooman's piece c is not found in my device; and my pieces e, f, g, and h are neither of them found in Brooman's device, unless they be regarded as substantially the same pieces as the pieces a, b, c, and d of Brooman; but if so regarded, then Brooman lacks the pieces a, b, and d of my device as illustrated in diagram No. 3, which shows the two devices superposed so as to bring Brooman's link coincident with mine. These differences, of themselves, necessarily show a substantial difference between the two devices, in my opinion. But the differences in operation are equally clear, and even more substantial. Brooman's device can be used only with very limited sizes of buttons, the size of the device remaining the same; for the button must necessarily be of a diameter nearly twice the length of the dotted line x x in diagram No. 1; while any button can be used with my device whose diameter is equal to the dotted line y y in diagram No. 2. On the other hand, the larger the diameter of the button, the greater the length of Brooman's link, as in using his device the button is necessarily inserted edgewise through the link, and directly between the piece d and the web lying around the piece a; while, in my device, there is no connection whatever between the length of the link and the size of the button used. I can use very narrow web with large buttons, which Brooman can not. The button is very much more securely held by my device than by Brooman's. In fact, I

have no doubt but that Brooman's device is entirely unpractical, so far as its use with common buttons is concerned; and entirely useless, unless a special metallic stud be used with it; and then only where there is a constant pull. I produce herewith samples of Brooman's device, and of my suspender strap claimed in my first claim. marked Exhibits B and C. My reasons for my delay in bringing this bill of complaint are, that I was very much discouraged by the uniformly adverse results of all my efforts to obtain a patent; so much so that, although I was absolutely certain, in spite of all the rejections, that I was entitled to a patent, yet I began to doubt whether it would be wise to expend any more money in the effort to obtain one. At that time, also, I was out of the suspender business, having engaged in the manufacture of perfumery early in the year 1870, and continued that manufacture till into the spring of 1872. Moreover, I had not then practically demonstrated the great value of my invention, although I had great faith in it. I did not resume the suspender business until the summer of 1872, and since that time I have learned to appreciate more and more fully the value and importance of my invention; and have been convinced that I am fully justified in going to the necessary expense of establishing what I believe to be clearly my right. The diagrams are on paper, marked 'Exhibit Diagrams.' (Signed) B. J. Greely."

"District of Massachusetts, Suffolk, ss. Sworn to and subscribed before me. October 10, 1873. (Signed) Samuel W. Clifford. Notary Public. (Seal.)"

To this was attached the specification as last amended before the principal examiner, and on which amendment it was appealed. The case was fully argued by counsel for complainant and for the patent office upon the record thus made up.

J. E. Maynadier, for complainant.
Marcus S. Hopkins, for the commissioner of patents, amicus curiae.

SHEPLEY, Circuit Judge. This is an application for a patent for an alleged improvement in suspender-straps. The application was filed in the patent office, September 13, 1869, with two claims, which were rejected. On December 10th they were withdrawn, and two others presented in lieu of them. These were rejected and withdrawn, and on February 23, 1870, the present claims were presented. These claims were rejected by the examiner, February 28th; and, on appeal, by the board of examiners, April 27th; and by the commissioner, on appeal from the board, September 17, 1870; and by the supreme court of the District of Columbia, on appeal from the commissioner, May 3, 1871.

The bill in equity in this case is filed under the provisions of section 52 of the act of July 8, 1870, and is virtually an appeal from the decree of the supreme court of the District of Columbia rejecting the application for the patent.

The applicant claims, in the second and most material and important claim to be considered in his application, "the metallic button-hole and link combined, above described, consisting of a single piece of metal, shaped as shown, so that the button used may be of a diameter greater than the width of the device."

The first claim, which is for a combination of the combined button-hole and link, with a piece of webbing with a button-hole at its free end and a slide, must stand or fall with the second claim. The question presented is: Whether the references cited in the record anticipate the complainant's alleged invention of the metallic button-hole and link combined, as described and claimed in the second claim.

The English patent of R. A. Brooman, granted in 1861, and cited in the references on the record, is for a combined link and button-hole. It has, first, a link for the purpose of attachment to the web; second, an enlarged body of the device to admit the insertion of the button; third, a loop at the bottom for retaining the button. This loop at the bottom also performs the function of admitting the button to pass more easily through the enlarged opening made to receive the button, by receiving the shank of the button as the button is being passed through the opening.

The device of Greely has, first, a link for attachment to the web; second, an enlarged body of the device for the insertion of the button; third, the loop at the bottom for retaining the button. Each one of these stands in the same relation to the others, and performs the same function in Greely's as in Brooman's device. The same elements enter in the same relations into the same combination, and they operate in the same way, separately and as a combined device. In Greely's device the opening to receive the button has its greatest diameter in a direction at right angles with the link, while in Brooman's the longest diameter is in a direction parallel with the link, so as to admit the button-hole in a direction at right angles with the direction in which it is admitted in Brooman's. To accommodate this change of direction, loops are also made on each side of the opening, as well as on the bottom, to receive the shank of the button as it is being passed through the metallic loop. This adds much to the convenience of the device, and works better in use and receives a button sideways. It is contended that it is impossible to use a button with Brooman's device whose diameter is greater than the width of the device, and no change in the relative proportion of the parts will make it possible. Width is used by the claimant to express the shorter diameter of the device as a whole, and not the shorter diameter of the operative part. It is easy to see that Brooman's de-

vice may be elongated, so as to receive sideways a button of greater diameter than the width of Brooman's device. Neither of them will admit a button of greater diameter than the length of the opening. In its relation to the b 'ron. the parts of the device intended to receive the button are to be considered, and in each of them the opening made to admit the button is longer than the diameter of the button in the line of the plane through which the button enters, and less than the diameter of the button measuring at right angles with that line. The difference between the two devices are merely structural changes. Such structural changes of form and proportions, although they improve the operation, without changing the mode of operation, and produce a much better result, although one of the same kind, are only different and better forms of embodying the same idea, and illustrate the difference between mechanical skill and inventive genius.

As compared with Brooman's invention, the complainant's device, as a combined device, is not a novel one, but possesses the same elements, operating in the same way, to produce the same result, and is not patentable. Bill dismissed.