### McCLERY v. BAKER et al.

#### (Circuit Court of Appeals, Seventh Circuit. October 1, 1894.)

#### No. 133.

PATENTS FOR INVENTIONS—NOVELTY—ORDER HOLDER.

Letters patent No. 273,301, issued March 6, 1883, to James B. McClery and Edward C. Page, for an order holder, consisting of four rigid boards,

connected by pliable hinges, and a stiff steel clamp, pressed · tightly over the back of the cover, so that the holder will hold a single sheet of paper, are void for want of novelty.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Suit by James B. McClery against George E. Baker, William A. Vawter, and Frank M. Vawter to restrain the alleged infringement of a patent. Defendants obtained a decree. Complainant appeals.

John H. Whipple, for appellant.

Munday, Evarts & Adcock (John W. Munday, of counsel), for appellees.

Before JENKINS, Circuit Judge, and BUNN, District Judge.

BUNN, District Judge. This suit is for the infringement of letters patent No. 273,301, issued March 6, 1883, to the complainant and one Page, who transferred his interest to the complainant. The claim of the patent is:

"An order holder, consisting of four rigid boards, connected by three pliable connections or hinges, and a clamp, adapted to fit over the outside of the central boards when folded together."

The decision of the circuit court dismissing the bill, though brief, covers the whole case. The court says:

"In view of similar devices in common use for similar purposes before this patent was applied for, it is impossible to find in this claim such novelty as is necessary to constitute invention, and the bill must be dismissed for want of equity."

This court has come to the same conclusion, and it may be unnecessary to add anything to this brief opinion of the circuit court. It seems quite apparent, on looking into the testimony and exhibits, that substantially the same device has been patented over and over again, and in use for various purposes for nearly a generation. There are but two points in which this patent seems to differ at all from several patents of prior dates, introduced in evidence. The main difference is in the method of pressing the papers or other things to be held between the boards used for covers so as to prevent their falling out until released for use. The complainant uses a steel clamp, five or six inches long, and slightly flexible, which is pressed tightly over the back of the cover. In the various other patents other devices are used, but all serving the same purpose of holding the sheets of paper, or photographs, pictures, handkerchiefs, or other things, by means of friction, until the owner chooses to release them. In the Keech patent, which was prior to that in suit, being issued in 1872, the clamp is composed of two elastic bands, one at the top and the other at the bottom of the cover, passed over the adjacent ends of the two middle pieces so as to draw them together. In the Archer patent, issued in 1876, there are the same four stiff covers united by flexible material, which makes the joints flexible, as in complainant's patent and in several others. For the purpose of clasping the covers together, screws are inserted through the middle pieces, with nuts which

screw down over the covers, pressing them together; the sheets of paper where they would come against the screws being notched at their edges. The papers are held between the covers by means of friction applied in this manner instead of by a clamp. In the Covert patent, issued in 1869, there are the same stiff boards, connected by flexible material, and making the same flexible joints as in the complainant's device. The paper or papers are inserted between the covers and held by means of a "rivet," as it is called in the patent, but which, in fact, is very similar to other paper fasteners in common use. This is passed through the two middle pieces of the cover and through the papers lying between, and the ends turned over and pressed down to hold them. The Billings patent, issued in 1867, was an invention of an automatic blotter, arranged in book form for convenient use upon a table or desk; and the invention consisted in the combination of the covers, the blotting paper, and a spring, or its equivalent, used to bring the paper and blotter together. But the spring, instead of holding the covers together, holds them apart. The covers, being lined with blotting paper, are held open for convenience for the insertion of other written sheets to take up the superfluous ink. The device is very similar to the complainant's, except that the action is of an opposite character, the spring pressing the sheets apart instead of together, but it would apparently require only a very ordinary degree of mechanical skill to change the device into that of the complainant's. And so with several other patents. The principal and only material difference is in the manner of pressing the boards together to hold the papers. In the Eastman patent, issued in 1876, there is a spring clamp which squeezes the covers together to hold the sheets, much like complainant's, though different in form. The one which the defendant is using varies from that of the complainant's no more in principle than many of the devices shown in the previous patents. He presses his covers together by a steel-wire spring extending the entire length of the back, constituting the middle boards. If this is substantially the complainant's device,—as no doubt it is,—it is scarcely any more so than those of the other previous patents referred to. The difference is merely a mechanical one, involving no invention. Any ordinary mechanic, or a person of common sense not a mechanic, and without the inventive faculty, would be fully equal to suggesting the change. They are all very old devices, and it is a mere question of which operates most conveniently.

The language of the United States supreme court in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, seems applicable to this case.

"The design of the patent law is to reward those who make some substantial discovery or invention which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention."

The other difference between the complainant's device and those of previous patents relates solely to the particular use to which it is put. Much stress is laid upon the fact that it is the only order holder eo nomine, and is intended to hold but one order, either on a single sheet or on several, and that it has introduced a better system of bookkeeping. This claim is founded upon the following statement in the patent:

"The holder is not intended to hold a volume, but only a single order at a time, on one or more, but not a great many, sheets of paper. The order is put in either by taking off the clasp, which can readily be detached from the cover, and replacing it when the order is in, or by pressing the backs together on a small fulcrum placed temporarily on the rear edge of the clasp."

It is apparent from the testimony and exhibits that one of the differences between complainant's device and the ones previously in use is that the latter have a much greater degree of adjustability. The complainant's rather stiff steel clamp in a single piece seems well adapted to holding a single sheet or any small number of sheets between the covers. From the sample in evidence it would appear that it is well adapted to hold, say, from one to ten sheets of paper of ordinary thickness, but not much more, though, of course, it would only require a thicker clamp to give the boards a greater capacity, in which case it could not be used for a single sheet. The other devices seem better adapted to holding a greater volume of sheets, having a wider adjustability. The only limit on the screw device is the length of screw, which may be longer or shorter, and so with the ordinary paper-holder device. The elastic clamp made of silk ribbon also admits of a high degree of adjustability, but after a time loses its holding power. But while these previous devices seem better adapted to holding a larger volume of paper, it is difficult to see why they are not as well, or nearly as well, adapted to holding a smaller volume, or even a single sheet. And what invention is there, when so many devices are in existence adapted to hold many sheets of paper, in making another to hold fewer sheets, or a single sheet? If this constituted a material difference amounting to invention, it would be difficult to find any infringement in the case, because the defendant's device in this particular of adjustability is more like the former devices; the steel-wire spring clasping the back of the covers being much more elastic and therefore better adapted to holding a large number of sheets than the complainant's device. We cannot think that these slight differences suggest any invention, being such as any ordi- nary mechanic, or any person not given to invention, would readily suggest. Nor does it constitute invention, when so many devices are in use for holding sheets of music, photographs, pictures, and sheets of paper generally, to make another, operating upon similar principles, for the particular purpose of holding commercial orders. Any device that will hold another sheet of paper will hold an order. The decree of the circuit court dismissing the bill of complaint is affirmed.