LOEWENBACH v. HAKE-STIRN CO. et al.

(Circuit Court of Appeals, Seventh Circuit. February 23, 1899.)

No. 527.

PATENTS—INVENTION—RECEIPT AND RECORD BOOKS.

The Loewenbach patent, No. 390,087, for a combination, in a carbon copying receipt and record book, of series of permanent and detachable leaves bound together, each of the former having a portion of its edge cut off so as to expose part of the leaf below, if not covering a mere aggregation, is void, in view of the prior state of the art, for want of patentable invention.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

This was a suit in equity by Hugo Loewenbach against the Hake-Stirn Company and others for alleged infringement of a patent for improvement in receipt and record books. The circuit court dismissed the bill, and the complainant appealed.

J. B. Erwin, for appellant.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

PER CURIAM. This appeal is from a decree dismissing a bill for an injunction against infringement of the fourth claim of letters patent No. 390,087, granted on September 25, 1888, to Hugo Loewenbach, for improvements in receipt and record books. The claim reads as follows:

"In a carbon-copying receipt and record book, the combination of series of permanent and detachable leaves bound together, each of the former having a portion of its edge cut off or out, so as to expose part of the leaf below, substantially as and for the purpose set forth."

While it is true that the exact counterpart of the patented device is not found in the prior art, every feature of it is to be found in earlier patented devices, combined in the same immediate relations and performing the same functions as in the present combination; and whatever of novelty there may be said to be in the combination, if it be not merely an aggregation, is a matter of selection and arrangement, which did not involve invention. For a further statement of the case, and for a presentation of the prior art, we quote from the opinion delivered below:

"The object in view, as stated in the brief of complainant, 'is to provide a book by which an original and one or more copies of a receipt or other record may be conveniently and quickly made by one writing,' and the advantages which are there asserted for the construction are: 'First, to facilitate opening it quickly at the place of the last entry; second, to make conveniently and quickly the original receipt and one or more copies by a single writing; third, to facilitate identifying and grasping the copy or copies to be detached without moving or turning back the permanent leaf above; and, fourth, to facilitate tearing out the copy or copies without the aid of a straightedge or other instrument.' That each of the essential elements entering into this combination is old appears from the proofs, and is conceded; and analogous use of each is shown as follows: (1) That the use of carbon sheets for manifolding was long anterior to the date of the patent is shown in several prior patents, and may be accepted as of common knowledge. (2) The 'combination of a series of permanent and detachable leaves bound together' was not only well known, but is fully set forth in S. Hano's patent, No. 224,529, granted in 1880, for copying books, in which the leaves are in sets of three,—two of nontransparent paper, made detachable by a 'line of punctures,' and an intermediate sheet of tissue paper to receive a copy and nondetachable; the pressure of the pen or pencil in writing on the upper sheet causing copies to be made on the under two sheets 'by means of a sheet of offset paper' coated upon both sides placed between the latter. The two sheets of writing paper were then detached for use, leaving the tissue copy to be retained in the book for a record. Patent No. 261,245, issued in 1882, to J. S. McDonald, for a manifold order book, shows like provision of a series of permanent and detachable leaves, of which the former is retained in the book for record. The binding of leaves to make them either permanent or detachable, and the various methods adapted to effect the latter purpose, were too well known to require mention, and are exemplified in several patents introduced by the defendants. (3) The permanent leaf, 'having a portion of its edge cut off or out, so as to expose part of the leaf below,' is designed to facilitate turning at once to the place for use. Of this feature the assertion is made on behalf of the patent that it covers any form of cutting the outer edge of the page; that it is immaterial 'which portion of the edge, or which edge of the leaf, is cut away, or what shape is given to the cut or removed portion of the leaf'; and such interpretation is reasonable. But, surely, it was not new at the date of the patent to provide similar devices for ready reference, as in digests, index books, etc. The Mott and Carroll patent of .1875, No. 169,828, for an 'Improvement in Account Books,' clearly described a construction in which one corner of the leaves is perforated for removal as the pages are filled, thus indicating the place of last entry. Earnshaw's patent of 1883, No. 283,872, shows provision in a sales book of alternate long and short leaves for the same object so that 'a salesman can at once get access to the proper sheet and fold thereof preparatory to making a record thereon'; and in Soesbe's patent of 1875, No. 169,491, and Burwell's patent of 1883, No. 285,794, the same feature clearly appears of alternate long and short leaves in series in which removal in the course of use left exposed the long leaf which is next to be used.

"From these references it is manifest that the several elements of the combination in question are not only old, but are found in prior combinations in which both employment and purpose are analogous. Each element works in the old way, and for its accustomed purpose. No new function is given

to either by the combined use. It is a mere aggregation of elements, which may produce better results, but not 'by their collocation a new result,'—the indispensable requirement for a patentable combination. Richards v. Elevator Co., 158 U. S. 299, 302, 15 Sup. Ct. 831; Id., 159 U. S. 477, 16 Sup. Ct. 53. In this view the patent must be held invalid under the numerous authorities in point. See Palmer v. Village of Corning, 156 U. S. 342, 15 Sup. Ct. 381, and cases reviewed; Olmsted v. A. H. Andrews & Co., 23 C. C. A. 488, 77 Fed. 835; Lumber Co. v. Perkins, 25 C. C. A. 613, 80 Fed. 528.

"Aside from the construction thus placed upon the patent, I am of opinion that this fourth claim is anticipated by the combination set forth in letters patent No. 285,794, issued to E. C. Burwell October 2, 1883, for a 'book' which is stated to be especially designed for use by railway conductors for 'checks given upon the payment of cash fare.' The book consists of a series of similar sets of three leaves each, one of ordinary writing paper, one carbonized, and the third of 'cardboard or thick, stiff paper (the latter being made longer), thus affording a tongue,' which both aids detachment and marks the place for use. It is true that the Burwell device differs from the complainant's in this: That the former shows each sheet perforated for ready detachment, a carbon sheet bound in, and the lower leaf of thick paper. But each of these performs a function in that device, and both element and function are omitted by the complainant without any substitute device. This does not constitute patentable invention. Richards v. Elevator Co., 159 U. S. 477, 16 Sup. Ct. 53."

The decree below is affirmed.