## STANDARD COMPUTING SCALE CO. v. LINCOLN SCALE CORPORATION.

No. 2468.

District Court, W. D. Pennsylvania.

Nov. 9, 1931.

Francis D. Hardesty, of Detroit, Mich., and Archworth Martin, of Pittsburgh, Pa., for plaintiff.

Byrnes, Stebbins, Parmelee & Blenko, of Pittsburgh, Pa. (by Walter J. Blenko and Wm. H. Webb, both of Pittsburgh, Pa.), for defendant.

McVICAR, District Judge.

In the bill it is alleged that plaintiff is the owner of patent 1,185,675 and that defendant has infringed the same after notice. The prayer is for injunctive relief and an accounting. In the answer defendant alleges invalidity and noninfringement of said patent. The following findings of fact and conclusions of law are made:

### Findings of Fact.

1. Plaintiff is a corporation organized and existing under the laws of the state of Michigan, and having its principal office at Detroit, Mich. It is engaged extensively in the manufacture of scales.

2. Defendant is a corporation organized and existing under the laws of the state of Delaware, having a regular and established place of business in the city of Latrobe, Westmoreland county, Pa. It is engaged in the

manufacture of scales under patent 1,646,151 owned by it.

3. January 15, 1916, Louis Jaenichen filed in the Patent Office of the United States an application for a patent for improvement of scales which he subsequently assigned to the Standard Computing Scale Company, Limited, a limited partnership. June 6, 1916, Letters Patent on said application were granted to the Standard Computing Scale Company, Limited, being No. 1,185,675, and being the patent in suit.

4. The Standard Computing Scale Company, Limited, was reorganized as a corporation under the name of the Standard Computing Scale Company. The corporation has taken over all of the assets of the partnership including the patent in suit.

5. There is no competent evidence of any assignment in writing, of the patent in suit, from the Standard Computing Scale Company, Limited, to the Standard Computing Company.

6. Plaintiff manufactured between January 15, 1916, and January 15, 1919, approximately thirty scales under the patent in suit. On the later date it ceased the manufacture thereof for the reason it was commercially unprofitable. Since said date it has not manufactured any of said scales.

7. In the specification of the patent in suit, it is stated: "This invention relates to computing scales in which the relative lengths of the lever arms are varied by means of thermostats, and its object is to provide a movable connection between the load-resisting springs and the main lever of the scale which connection shall involve a minimum amount of friction."

8. In the specification it is further stated: "This invention consists, in combination of a load receiving lever, a load resisting member connected thereto, a thermostat for shifting one member relative to the other and novel connecting mechanism between the lever and the load resisting member provided with knife edge pivots whereby the friction between said members is kept down to a minimum."

9. In the specification it is further stated: "In all spring scales, the springs become slightly weaker with increasing temperatures, and hence a given load on the load receiver will cause slightly greater expansion of the springs at high temperatures than at low, usually resulting in 'short weight.' On the other hand, if the scale is sealed at high temperature, the scale will weigh 'long' during colder weather. The relative lengths of the two arms of the main scale lever can be so changed as to counteract this action of the springs, but devices for such purpose must operate with a minimum of friction at all times. I propose to provide a thermostat to vary the effective length of the arm of the main lever to which the spring is attached, the load arm remaining constant."

10. In the specification it is further stated: "Any other desired form of thermostat, lever, and platform support may be employed as the parts thus far described form no part of the present invention."

11. The claims upon which plaintiff relies are claims 1 and 2, which read:

"1. In a weighing scale, the combination of a main lever, a spring to resist the movement of the lever under a load, a thermostat mounted on said lever, a member pivotally connected to said lever and to said spring, and means connected to said thermostat and said spring for varying the effective length of the lever.

"2. In a weighing scale, the combination of a main lever, a spring to resist the movement of the lever under load, a link to which the spring is connected, a thermostat mounted on the lever, a rod connecting the thermostat to said bar whereby the thermostat may move the end of the spring toward and away from the fulcrum of the lever, and a connecting member extending between and pivotally engaging the lever and said link at the end of the spring whereby stresses may be transmitted from the lever to the spring with substantially no friction."

12. Claim 2 is too uncertain, ambiguous, and indefinite to be understood by those skilled in the art involved.

13. Every element of claims 1 and 2 of the patent in suit is shown in Hopkinson patent No. 770,807, and Hapgood patents Nos. 804,947 and 903,083.

14. The file wrapper of the patent in suit discloses that the Examiner did not consider the Hopkinson and Hapgood patents.

15. It was old prior to the alleged invention of Jaenichen to connect the main lever and the nose iron of spring weighing scales having thermostats thereon by means of ball bearings, which ball bearings functioned to space the parts without friction.

16. It was old prior to the alleged invention of Jaenichen to provide a substantially frictionless connection between the nose iron and the main lever of a spring weighing scale.

17. Ball bearing connections are the equivalent of the knife-edge structure of the patent.

336

18. The use of knife-edge pivots for obtaining substantially frictionless connections between elements was old in the scale industry prior to the alleged invention of Jaenichen.

19. The various devices which have been used for the purpose of cutting down friction, as between the nose iron and the main lever, differ from one another merely in degree, and the question of friction as between the parts is merely a question of degree.

20. The Dayton Scale Company prior to 1914 manufactured and sold a satisfactory spring weighing scale containing a thermostat similar to the thermostat of defendant's structure.

21. Any ordinary mechanic working in the scale industry would know that in order to overcome any additional friction in the movement of the nose iron it would merely be necessary to increase the power of the thermostat.

22. No new result was obtained by Jaenichen in connecting the main lever of the scale with the nose iron by means of a knife-edged member.

23. Jaenichen merely brought old devices into juxtaposition and allowed each to work out its own effect and operate in its own way without the production of something novel. He substituted old and well-known knife-edge pivots for the ball bearings of the prior art, which knife-edge pivots are the equivalents of ball bearings. He used known equivalents for some of the elements of former structures to reduce the amount of friction between the nose iron and the main lever.

24. The connection between the main lever and the nose iron of defendant's structure is not a knife-edge connection.

25. The connection between the main lever and the nose iron of defendant's structure is not substantially frictionless, but, on the contrary, has a substantial amount of friction in it, which friction serves a useful purpose.

26. The structure of the defendant does not have therein "a member pivotally connected to said lever and to said spring" as called for by claim 1 of the patent in suit.

27. The structure of the defendant does not have therein "a connecting member extending between and pivotally engaging the lever and said link at the end of the spring" as called for by claim 2 of the patent in suit.

28. Defendant had direct notice of infringement from plaintiff of the patent in suit, and also by the marking of scales manufactured by it as required by statute.

Conclusions of Law.

1. Plaintiff has failed to show title in it of the patent in suit.

2. Claims 1 and 2, being the claims involved in this suit, are invalid as lacking invention. They were anticipated in the prior art.

3. The bill should be dismissed at plaintiff's costs.

Opinion.

35 U. S. C. § 47 (35 USCA § 47), provides: "Every patent or any interest therein shall be assignable in law by an instrument in writing, and the patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States."

In Walker on Patents, § 572, it is stated: "It is enough to say, in this connection, that no title will be recognized in a court of law, unless it is evidenced by instruments in writing."

■ No assignment, or duly certified copy of such assignment, or the record of such an assignment of the patent in suit was offered in evidence, although the point was at issue under the pleadings and objection to other methods of proof were seasonably made at the trial. It seems to follow, therefore, that plaintiff has failed to establish title in itself, in the manner provided by law, of the patent in suit.

■ The patent in suit not having been used by plaintiff, a large manufacturer of scales, since January 15, 1919, for the reason that it was commercially unprofitable to manufacture the structure provided for therein, and before that time it manufactured only thirty such structures, it follows that the patent should be strictly construed. Toledo Scale Co. v. Barnes Scale Co., 18 F.(2d) 965 (D. C. E. D. Mich.); Dernell Potato Products Co. v. Snelling, 38 F.(2d) 788 (C. C. A. 2); Cocks et al. v. Rip Van Winkle Wall Bed Co., 28 F.(2d) 921 (C. C. A. 9); National Malleable Castings Co. v. Buckeye Malleable Iron & Coupler Co. et al., 171 F. 847 (C. C. A. 6); and Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118, 39 L. Ed. 153.

■ Admittedly, the patent in suit, if it made any advance in the art, it was slight, therefore it should be given a narrow construction. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

■ The prima facie validity of the patent in suit is weakened by the failure of the Exam-

iner to examine and consider the Hopkinson and Hapgood patents. American Soda Fountain Co. et al. v. Sample, 130 F. 145 (C. C. A. 3); Elliott & Co. v. Youngstown Car Mfg. Co., 181 F. 345 (C. C. A. 3); Westinghouse Electric & Mfg. Co. v. Toledo, P. C. & L. Ry. Co., 172 F. 371 (C. C. A. 6); and Cleveland Foundry Co. et al. v. Kaufmann Brothers, 126 F. 658 (C. C. W. D. Pa.).

Where the combination of elements are old (as in the patent in suit), in order to be patentable "their correlation must produce a different force or effect or result from the sum of that which is produced by their separate parts." Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Robinson on Patents, § 154; Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241; Pickering v. McCullough, 104 U. S. 310, 315, 26 L. Ed. 749; Goodyear Tire & Rubber Co. v. Rubber Tire Wheel Co., 116 F. 363 (C. C. A. 6); and Bullock Electric Mfg. Co. v. General Electric Co., 149 F. 409 (C. C. A. 6).

The mere bringing forward of an old thought, or the substitution of an equivalent, producing a more perfect result, does not of itself produce patentable invention. Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Crouch v. Roemer, 103 U. S. 797, 26 L. Ed. 426; Marchand v. Emken, 132 U. S. 195, 10 S. Ct. 65, 33 L. Ed. 332; Hansen v. Slick, 230 F. 627 (C. C. A. 3); Lehman v. Ripley et al., 3 F.(2d) 518 (C. C. A. 8); and Railroad Supply Co. v. Elyria Iron Co., 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136.

Applying the foregoing rules of law to the facts as found, it follows that the bill should be dismissed.

### Decree.

This cause came on to be heard at this time and was argued by counsel, and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed as follows, viz.: That the bill is dismissed at the costs of the plaintiff.